George Hofmann (10005)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Avalon Care Center-Chandler, LLC

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Bankruptcy No.  17-27825 (JTM) |
| AVALON CARE CENTER-CHANDLER, LLC, | Chapter 11 |
| Debtor. | |

## NOTICE OF THIRD AMENDED DISCLOSURE STATEMENT AND REDLINED VERSION OF DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that Avalon Care Center-Chandler, LLC (the "Debtor"),

has filed with the United States Bankruptcy Court for the District of Utah its third

amended proposed Disclosure Statement at Docket No. 89 in the above-captioned

case. Attached as <u>Exhibit 1</u> is a redlined version of the third amended Disclosure

Statement, marked to show changes since the last version filed with the Court on

January 4, 2018 [Docket No. 73]. The attached redlined version is filed without exhibits.

Dated:        January 26, 2018

        **Cohne Kinghorn, P.C.**

        /s/ Jeffrey Trousdale
        George Hofmann
        Jeffrey Trousdale
        Attorneys for the Debtor

{00365633.DOC /}

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2018, I caused to be served a true and correct copy of the **NOTICE OF SECOND AMENDED DISCLOSURE STATEMENT AND FIRST AMENDED PLAN AND REDLINED VERSION OF DISCLOSURE STATEMENT AND PLAN** (the "Notice") as follows:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CF/ECF System:

- Kenneth L. Cannon          kcannon@djplaw.com, khughes@djplaw.com
- George B. Hofmann          ghofmann@cohnekinghorn.com,
                             dhaney@cohnekinghorn.com; jthorsen@cohnekinghorn.com
- Penrod W. Keith            pkeith@djplaw.com, khughes@djplaw.com
- John T. Morgan tr          john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;
                             Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Jeffrey L. Trousdale       jtrousdale@cohnekinghorn.com, nlakey@cohnekinghorn.com
- United States Trustee      USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Joshua D. Barton                    Melanie L. Bossie
Wilkes & McHugh, P.A.               Wilkes & McHugh, P.A.
15333 N. Pima Road                  15333 N. Pima Road
Suite 300                           Suite 300
Scottsdale, AZ 85260                Scottsdale, AZ 85260


                                    */s/  Janelle Dannenmueller*

79447.01

# EXHIBIT 1

(Redlined Disclosure Statement)

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF LIQUIDATION DESCRIBED HEREIN.  ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

George Hofmann (10005)
Jeffrey Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

*Counsel for the Debtor and Debtor in Possession*

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| In re: | **Bankruptcy Case No 17-27825** |
| AVALON CARE CENTER-CHANDLER, LLC, | Chapter 11 |
| Debtor-in-Possession. | Honorable Joel T. Marker |

**DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF LIQUIDATION**

---

Dated: January 426, 2018.

{00365627.DOCX /}

## Table of Contents

ARTICLE I.    INTRODUCTION ................................................................. 2
   A.   Purpose, Limitations and Structure of this Disclosure Statement ............. 2
   B.   Voting on the Plan .......................................................................... 5
      1.   Voting Classes and Presumed Acceptance. .................................. 6
      2.   One Vote Per Holder........................................................... 6
      3.   Procedures and Deadlines for Completing Ballots and Voting. ....... 6
      4.   Procedures for Vote Tabulation............................................. 7
      5.   Record Date .8
      6.   Confirmation Hearing  - Rules Governing Objections to Confirmation .............................................................. 8

ARTICLE II.    GENERAL INFORMATION ABOUT THE DEBTOR......................... 10
   A.   Background of the Debtor .............................................................. 10
   B.   Ownership Structure ..................................................................... 12
   C.   Tort Claims. ............................................................................... 13
   D.   Pre-Petition Secured Debt. ............................................................ 15
   E.   Events Leading to Commencement of Chapter 11 Case ...................... 16

ARTICLE III. THE DEBTOR'S CHAPTER 11 CASE ........................................ 17
   A.   Events During the Case ................................................................ 17

ARTICLE IV.    THE PLAN..................................................................... 18
   A.   Purpose of Plan. ......................................................................... 18
   B.   Classification and Treatment of Claims and Interests .......................... 20
   C.   Plan Overview. ............................................................................ 20
   D.   Summary of Treatment of Claims and Interests................................. 21
      1.   Unclassified Claims. ........................................................ 21
      2.   Classified Claims Against and Interests in the Debtor................. 22
   E.   Plan Implementation .................................................................... 26
      1.   General ........26
      2.   Vesting of Assets; Release of Liens; Further Implementation....... 27
      3.   Preservation of Causes of Action ......................................... 29
      4.   Compromise and Settlement............................................... 30
      5.   Terms of Injunctions or Stays............................................. 31
      6.   Further Assurances. ........................................................ 31
      7.   Effects of Appeal. ........................................................... 32
      8.   Exemptions from Certain Transfer Taxes and Recording Fees. ... 32
      9.   Termination of Committee................................................. 33
   F.   Claims....................................................................................... 33
      1.   Claims Administration ...................................................... 33

      2.     Estimation of Disputed Claims ....................................................... 34
      3.     Interest on Claims. ......................................................................... 35
  G.    Executory Contracts................................................................................ 35
      1.     Rejection of Contracts and Leases ............................................... 35
      2.     Bar to Rejection Damages ............................................................. 36
      3.     Cure of Defaults ............................................................................. 36
      4.     Modification and Amendments....................................................... 36
      5.     Revocation, Withdrawal or Non-Consummation........................... 37
  H.    Confirmation ........................................................................................... 38
      1.     Voting Procedures and Solicitation of Votes ................................ 38
      2.     Confirmation 38
      3.     Conditions to Confirmation ........................................................... 43
      4.     Conditions to Effective Date .......................................................... 44
      5.     Waiver of Conditions ...................................................................... 44
      6.     Effect of Failure of Conditions ...................................................... 44
  I.     Federal Income Tax Consequences ...................................................... 45
      1.     Consequences to Interest Holders ............................................... 47
      2.     Consequences to Holders of Secured Claims and Unsecured
                 Claims................................................................................. 49
      3.     Accrued but Unpaid Interest ......................................................... 49
      4.     Information Reporting and Withholding ........................................ 50
  J.     Risk Factors ........................................................................................... 51
      1.     Certain Bankruptcy Considerations.............................................. 51
      2.     Material United States Federal Income Tax Considerations ....... 52
  K.    Alternatives to Plan ............................................................................... 52
      1.     Liquidation Under Chapter 7 ......................................................... 53

ARTICLE V.      CONCLUSIONS AND RECOMMENDATION .................................... 53

This disclosure statement (the "Disclosure Statement") is distributed for purposes of soliciting acceptances of the Debtors Plan of Liquidation, dated January 4, 2018 (the "Plan").  The information in this Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan.  No solicitation of votes to accept the Plan may be made except pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

All creditors are advised and encouraged to read this entire Disclosure Statement and the Plan before voting to accept or reject the Plan.  A copy of the Plan is attached as Exhibit "A."  Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan and this Disclosure Statement.  The statements contained in this Disclosure Statement are made only as of the date hereof.  There is no assurance that the statements contained in this Disclosure Statement will be correct at any later date.  In the event of any conflict between this Disclosure Statement and the terms of the Plan, the terms of the Plan will govern.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and rule 3016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and not necessarily in accordance with Federal or State securities laws or other non-bankruptcy law.

As to contested matters, adversary proceedings and other actions, threatened actions or disputes, this Disclosure Statement will not constitute or be construed as an admission of any fact or liability, or as a stipulation or waiver, but rather as a statement made in settlement negotiations.  This Disclosure Statement will not be admissible in

any bankruptcy or non-bankruptcy proceeding involving the Debtor or any other party (other than in connection with approval of this Disclosure Statement or confirmation of the Plan), nor will it be construed to be conclusive advice on the tax or other legal effects of the Plan as to holders of Claims against, or Interests in, the Debtor.

## ARTICLE I.   INTRODUCTION

### A.    Purpose, Limitations and Structure of this Disclosure Statement

This Disclosure Statement is intended to provide such information as may be material, important and necessary for a reasonable investor typical of the holders of Impaired Claims to make an informed decision whether to vote in favor of or against the Plan.  Only the holders of Allowed Claims or Interests of a Class that is Impaired under the Plan and not deemed to have rejected the Plan are entitled to vote on the Plan.

This Disclosure Statement sets forth certain information concerning the Debtor's prepetition operations and financial history, the reason for filing the Chapter 11 petition, significant events that occurred during the Chapter 11 Cases, and the Debtor's Assets and Liabilities.

This Disclosure Statement also summarizes the terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, and the way distributions will be made under the Plan.   In addition, this Disclosure Statement discusses the confirmation process and procedures that holders of Claims who were entitled to vote on the Plan must follow for their votes to be counted.

This Disclosure Statement contains a summary of certain provisions of the Plan and certain other documents and financial information. While it is believed that the

summaries are fair and accurate and provide adequate information with respect to the documents summarized, each such summary is qualified to the extent that it does not set forth the entire text of such documents, which are controlling, in the event of any inconsistency. While reasonable efforts have been made to be accurate, there can be no representation or assurance that the information contained herein is complete and without error.   The Disclosure Statement, however, is not the Plan.  In the event of any inconsistency between the Disclosure Statement and the Plan, the Plan will control. Each holder of a Claim is urged to review the Plan and the exhibits to this Disclosure Statement in their entirety before casting a ballot.

For a description of the Plan and certain risks and other factors pertaining to the Plan as it relates to holders of Claims and Interests, see "Summary of the Plan" and "Risk Factors" below.

The Bankruptcy Court has not passed on the merits of the Plan and has not conducted a detailed investigation into the contents of this Disclosure Statement.  The Bankruptcy Court's approval of this Disclosure Statement does not constitute either a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the Plan by the Bankruptcy Court.

Neither the Plan nor the Disclosure Statement have been approved or disapproved by the Securities and Exchange Commission, nor has the Securities and Exchange Commission passed upon the fairness or merits of the information contained herein.  Any representation to the contrary is unlawful.

No representations concerning the Debtor, its business operations, the value of its property, or the value of benefits offered to creditors or other parties in interest in connection with the Plan are authorized other than as set forth in this Disclosure Statement.  You should not rely on any representations or inducements made to secure your acceptance or rejection of the Plan which are contrary to the information contained in this Disclosure Statement.

You are not to construe the contents of this Disclosure Statement as legal, tax or accounting advice but should consult your counsel, accountant and business advisors as to legal, tax and accounting matters concerning the Plan.

The Debtor prepared the information contained in this Disclosure Statement in good faith, based upon the information available to it.  No audit of the financial information contained in this Disclosure Statement has been conducted.  Moreover, certain of the statements contained in this Disclosure Statement, by their nature, are forward-looking and contain estimates, assumptions and projections, and there can be no assurance that these forward- looking statements will turn out to be true.

On _____, 2018, after notice and a hearing, the Bankruptcy Court issued an order (the "Disclosure Statement Order") approving this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical of the Debtor's Creditors to make an informed judgment whether to accept or reject the Plan. Approval of this Disclosure Statement does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

**B.    Voting on the Plan**

Pursuant to the Bankruptcy Code, only Classes of Allowed Claims that are Impaired under the Plan are entitled to vote to accept or reject the Plan.   Equity Interests shall neither receive or retain any property under the Plan, are deemed to have rejected the Plan and therefore are not entitled to vote.  Classes of Claims that are not Impaired are not entitled to vote and are deemed to have accepted the Plan. Similarly, Classes of Claims that are not Allowed are not entitled to vote to accept or reject the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting.   Further, pursuant to *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988), an Impaired Class of holders of Claims or Equity Interests shall be deemed to have accepted the Plan if no votes are cast against the Plan by any holder of a Claim or Equity Interest in the particular Class in question.

Only holders of Allowed Claims shall be entitled to vote on the Plan.  A Claim to which an objection has been filed is a Disputed Claim, not an Allowed Claim, unless and until the Bankruptcy Court rules on the objection and has Allowed the Claim. Therefore, although holders of Claims subject to a pending objection will receive ballots, their votes will not be counted unless the Bankruptcy Court, prior to the Confirmation Hearing, rules on the objection and allows the Claim or, on proper request under Bankruptcy Rule 3018(a), temporarily allows the Claim in an amount which the Bankruptcy Court deems

proper for the purpose of voting on the Plan prior to the time for ballots to be returned. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith and in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

### 1.      Voting Classes and Presumed Acceptance.

Holders of Allowed Claims in Classes 1 and 2 are not Impaired and, consequently, are not entitled to vote on the Plan.  Holders of Claims in these Classes, therefore, are conclusively presumed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.  Equity Interests of Class 7 do not receive anything under the Plan, are deemed to reject the Plan and do not vote.  All other Classes of Claims are entitled to vote.

### 2.      One Vote Per Holder.

If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

### 3.      Procedures and Deadlines for Completing Ballots and Voting.

A ballot for accepting or rejecting the Plan is enclosed for use by those holders of Claims entitled to vote on the Plan.  Holders of Claims entitled to vote should carefully read this Disclosure Statement, the Plan and the instructions contained on the ballot and complete, date, sign and mail the ballot to the address indicated on the ballot so that it is received no later than _____,_____ 2018.  Your acceptance or rejection of the Plan must be indicated by voting in favor of or against the Plan on the

enclosed ballot.  You must complete and sign your original ballot (copies will not be accepted) and return it in the envelope provided.  In order for your vote to be counted, your properly completed ballot must be actually received at the address indicated on the ballot no later than _____, _____2018 at 4:30 p.m., prevailing Mountain Time.

If you have questions about (i) the procedure for voting, (ii) the packet of materials you received, or (iii) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy or copies of the Plan, this Disclosure Statement or any appendices or exhibits to such documents, please contact George Hofmann, at Cohne Kinghorn, P.C., at (801) 363-4300 or by mail, email or facsimile at the address listed on the cover sheet of this Disclosure Statement.

### 4.    Procedures for Vote Tabulation.

In determining whether the Plan has been accepted or rejected, any ballot timely received that contains sufficient information to permit the identification of the claimant, is signed by the claimant or an authorized agent, and is cast as an acceptance or rejection of the Plan will be counted.

The following ballots will not be counted in determining whether the Plan has been accepted or rejected: (a) any ballot received after the voting deadline as set by the Bankruptcy Court; (b) any ballot that is not signed or that contains insufficient information for the identification of the claimant; (c) any ballot timely received that indicates neither an acceptance nor a rejection of the Plan; (d) any ballot timely received that both indicates an acceptance and a rejection of the Plan; (e) any ballot

cast by (i) a Creditor who is not listed as a Creditor on the Debtor's Schedules or whose Claim is listed as disputed, contingent or unliquidated, and who has not timely filed a proof of claim or interest with respect to the Claim or Interest being voted; or (ii) a Creditor who has timely filed a proof of claim or interest that is the subject of an objection or a pending adversary proceeding disputing such Claim and who has not obtained the temporary allowance of its Claim for voting purposes; and (f) any ballot cast by an Entity who does not hold a Claim in the Class in which it voted.

Whenever two or more ballots are cast by the holder of the same Claim prior to the voting deadline, the last ballot received prior to the voting deadline will be deemed to reflect the voter's intent and thus supersede prior ballots.

### 5.     Record Date

The entry date of the order approving this Disclosure Statement shall be the record date for all Claims for voting purposes (the "Record Date").   Persons that did not hold an Allowed Claim as of the Record Date will not be permitted to vote to accept or reject the Plan.

### 6.     Confirmation Hearing  - Rules Governing Objections to Confirmation

Pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Confirmation Hearing is scheduled to commence on January 29, 2018 at 2:30 p.m. (prevailing Mountain Time), before the Honorable Joel T. Marker, in Courtroom 341 of the United States Bankruptcy Court for the District of Utah, on the Third Floor of the United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101. The

Confirmation Hearing may be continued from time to time by the Debtor or the

Bankruptcy Court without further notice other than by announcement of the continued

date at the Confirmation Hearing or at any subsequent continued Confirmation Hearing.

Objections to confirmation of the Plan are governed by Rule 9014 of the

Bankruptcy Rules.  Such objections, if any, must be in writing, must provide the name,

current address and telephone number of the objecting party and counsel, must set

forth with specificity all factual and legal bases for the objection, must specify the

amount of such party's Claims, and must be filed and served so as to be actually

received by the Bankruptcy Court and each of the following not later than

_____, 2018:

To Counsel for the Debtor:

George Hofmann
Jeffrey Trousdale
Cohne Kinghorn, P.C.
111 East Broadway, 11th Floor
Salt Lake City, UT 84111


To the Office of the United States Trustee:

John Morgan, Esq.
405 South Main St.
Suite 300
Salt Lake City, Utah 84111

Pursuant to Bankruptcy Rule 3020(b)(2), the Bankruptcy Court may confirm the

Plan without receiving evidence if no objection to confirmation is timely filed.

## ARTICLE II.  GENERAL INFORMATION ABOUT THE DEBTOR

### A.      Background of the Debtor

The Debtor was the tenant/operator of a 120 licensed bed skilled nursing facility in Chandler Arizona known as the Chandler Health Care Center (the "Nursing Home"). The Nursing Home was the Debtor's sole business operation.  The Nursing Home was comprised of a 60-bed Medicare rehabilitation unit and a 60-bed long term care unit. The Debtor operated the Nursing Home under a long-term triple-net lease with 2121 West Elgin Street, LLC, an Arizona limited liability company.  The Nursing Home experienced significant annual losses and in early 2015 the Debtor approached the Ensign Group, a publicly-held health care company, about its take-over of the Debtor's lease operations.  On May 1, 2015, the Debtor entered into an "operations transfer agreement" with Ocotillo Health Care, Inc. ("Ocotillo"), which is an entity the Debtor understands to be affiliated with the Ensign Group. Ocotillo entered into a new lease with the landlord, the lease between the Debtor and its former landlord terminated, and the Debtor received a negotiated sum of approximately $420,000 for certain of its personal property (FF&E) in the premises.  The Debtor used the negotiated sum to pay the costs of the transaction with the Ensign Group, including attorneys' fees, and to satisfy other payables tied to the Nursing Home.  The negotiated sum was not used to pay bonuses or distributed to the Debtor's parent or affiliated entities.   The Ensign Group currently operates the Nursing Home, and did not assume the Debtor's liabilities through the transfer.

Since the transfer, the Debtor has been in the process of collecting assets, such as accounts receivable, and resolving claims, including the Tort Claims described herein. Outside of efforts to collect outstanding accounts receivable, the Debtor had no ongoing business operations after it completed the transfer of the Nursing Home. Pursuant to a "backend services agreement" with Avalon Health Care Management of Arizona, LLC ("Avalon Management LLC")—which also provided pre-transfer collection services for the Debtor—the Debtor underwent industry-standard efforts to collect outstanding accounts receivable owed to the Debtor.  While the Debtor was able to collect on a portion of outstanding accounts receivable in the time immediately after the transfer, its efforts to collect accounts receivable became less successful with the passage of time, due in part to factors that are unique to the nursing home context— namely, delay and difficulty in working with governmental health care programs, such as Medicare and Medicaid, difficulty in obtaining reimbursements from private insurance, and difficulty tracking down patients who often move from nursing home to nursing home or become otherwise impossible to locate or collect from.  Despite its best efforts, the Debtor was unable to collect on any accounts receivable in the year preceding the filing of its bankruptcy petition and has written off approximately $120,712 in accounts receivable since October 2015. All of the accounts receivable collected by the Debtor since May 2015 (and prior) were paid to MidCap Financial Services, LLC ("MidCap"), pursuant to its secured claim against the Debtor. As stated in the Debtor's Statements of Financial Affairs and Schedules of Assets and Liabilities (collectively, the

"Schedules"), the Debtor values its outstanding accounts receivable at $0 as of the Petition Date.

### B.    Ownership Structure

The Debtor is owned by Avalon of Arizona, LLC, which in turn is owned by Avalon Care, LLC, which is owned by Avalon Holding, Inc. ("Avalon Holding"), which is owned by Avalon Health Care, Inc.  During the time-period in which the Debtor operated the Nursing Home, managerial services were provided by Avalon Health Care Management, Inc. and Avalon Management LLC, both of which are affiliates of the Debtor. As provided in the Schedules, Avalon Holding made payments totaling approximately $1,657,190.29 for third-party services and/or goods provided to the Debtor, for which Avalon Holding has a claim. Similarly, Avalon Health Care Management, Inc. and Avalon Management LLC have a prepetition, solidary claim against the Debtor in the amount of $2,625,811.76 for management services provided to the Debtor.

The Debtor is managed by its sole manager and sole member, Avalon of Arizona, L.L.C.  Pursuant to the resolution of Avalon of Arizona, L.L.C., which, among other things, authorized the Debtor's bankruptcy filing (see Docket No. 2), Charles R. Kirton, Anne Stuart, Hyrum Kirton, David Giles, Scott Carpenter, Allison Griffiths, and William di Sera were each authorized to act on behalf of the Debtor.  Under the Plan, these individuals will continue to act on behalf of the Reorganized Debtor after the Effective Date.  None of these individuals shall receive compensation from the Debtor for their services.

**C.      Tort Claims.**

As of the Petition Date, the Debtor faced two known tort claims arising out of care provided to past residents.  Both tort claims are subject to pending litigation in Arizona.

In *Rostain v. Avalon Care Center-Chandler, L.L.C.*, Arizona Superior Court, Maricopa County, Civil No. CV 2015-002229 (the "Rostain Litigation"), the plaintiff asserts claims based on Arizona's Adult Protective Services Act and for wrongful death. Rostain alleges that her mother, a resident at the Nursing Home, died as the result of wrongful conduct by staff at the Nursing Home.  This claim is based on the events of February 11, 2014.  On that date, Rostain's mother became non-responsive and was transported to a hospital, where she later died.  Rostain asserts that the resident's personal physician ordered transport earlier in that day, but that the order was ignored by the Nursing Home.  The Debtor asserts that no such physician order was given, that appropriate care was provided to the resident and that her death was a result of her significant underlying medical conditions – not improper care.

In this action, Rostain asserts that Avalon Health Care Centers, LLC, Avalon Management LLC, Avalon Health Care Management Inc., and Avalon Health Care, Inc. are liable with the Debtor under an alter ego or joint enterprise theory.  Although the Rostain plaintiff has not fleshed out this claim with much particularity, the Debtor understands that this claim is based on allegations that monies were siphoned from the Debtor, the other entities hired and controlled the staff at the Nursing Home; and the other entities exercised the degree of control over finances, budget, policies and procedures such that such entities were, and are, the alter ego of the Debtor.  The other

entities each deny these claims.  Under the Plan, such claims will be deemed property of the bankruptcy estate and will be resolved by a third party, independent chief restructuring officer appointed for that purpose.  As explained further herein, Rostain disputes that the Alter Ego Claims are property of the bankruptcy estate.

In *Disarno v. Avalon Care Center-Chandler, LLC*, Arizona Superior Court, Maricopa County, Civil No. CV2015-008817 (the "Disarno Litigation"), the plaintiff also asserts claims based on Arizona's Adult Protective Services Act and for negligence. This case involves allegations surrounding the care given to a terminally ill resident. Although the resident succumbed to her illness, her heirs have alleged that she suffered injuries before her death while under the care of the Nursing Home.  The Debtor disputes the allegations.

The *Disarno* plaintiffs also assert alter ego claims similar to those asserted by the *Rostain* plaintiff.  Under the Plan, such claims will be deemed property of the bankruptcy estate and will be resolved by a third party, independent chief restructuring officer appointed for that purpose.  As explained further herein, the *Disarno* plaintiffs dispute that the Alter Ego Claims are property of the bankruptcy estate.

Although the Debtor is unaware of any particular claim, the statute of limitation has not expired on other tort claims that may exist.  Consequently, there may be additional tort claims filed in this case. The possible existence of additional outstanding tort claims is a significant reason why the Debtor chose to file its petition, in that the Bankruptcy Court provides a single, specialized forum to assess, liquidate, and pay claims against the Debtor.

### D.      Pre-Petition Secured Debt.

MidCap Financial Services, LLC ("MidCap") provided a line of credit used by the
Debtor as well as certain other companies within the Avalon corporate structure. In
total, the line of credit involved eight separate nursing homes, including the Debtor. To
explain further, all account receivable collections for each of the nursing homes were
deposited daily into one bank account, which funds were then wired to Midcap to pay
down the line of credit. The Debtor (and the other nursing homes) borrowed those funds
back from MidCap as they were needed, and deposited borrowed funds into an
operating account to pay the Debtor's normal operating expenses.

As of the Petition Date, the amount owing on such line was approximately
$3,487,382.00, which amount was owed jointly and severally by the Debtor and certain
other related entities.  The line of credit is guaranteed by Avalon Healthcare, Inc. The
Debtor believes that MidCap holds a lien on all of the assets of the Debtor to secure
payment of this obligation.  However, the Reorganized Debtor intends to investigate the
extent, validity, and priority of MidCap's alleged lien, and to the extent that no such lien
exists, or that such lien is subject to avoidance, the Reorganized Debtor may take steps
as appropriate to avoid or otherwise resolve the alleged lien. Additionally, any
Unsecured Claim held by MidCap (as a deficiency balance on its Secured Claim, or
otherwise) shall be treated as a Class 6 Subordinated Claim. As disclosed above,
MidCap received payment of all of the Debtor's accounts receivable collected since May
2015, pursuant to its secured claim against the Debtor.

E.    **Events Leading to Commencement of Chapter 11 Case**

Since terminating its Nursing Home operations, the Debtor has been engaged in collecting assets and resolving obligations.    As stated above, the Debtor took reasonable steps to collect on accounts receivable, but has been unable to collect on accounts receivable in the year preceding the Petition Date. The Debtor considers any outstanding accounts receivable that remain to be worthless.  The Debtor has been able to pay most of its general unsecured obligations, but is facing substantial tort claims. Although the Debtor has some insurance coverage available for such claims, the amount asserted by the two known tort claimants is greater than the available insurance coverage, and there could be additional tort claimants of whom the Debtor is presently unaware.

Under the Debtor's insurance policy, for each claim year, insurance is not available until (1) payment by the Debtor of a per claim self-insured retention amount of $250,000; and (2) the aggregate payment by any of the insured Avalon entities, including the Debtor, of either $750,000 to $1,000,000 per claim year, the amount of which depends on the particular year.  Through its proposed plan, the Debtor intends on both obtaining access to such insurance funds without first having to pay the foregoing payments and maximizing such insurance funds for all tort claimants, notwithstanding the date such particular tort claim is liquidated. Any claim of any insurer against the Debtor for retrospective premiums, self-insured retentions, deductible payments, or any other monetary obligations with respect to insurance policies issued prior to the Petition

Date or with respect to coverage of claims made under insurance policies shall constitute Class 5 Unsecured Claims if otherwise allowed.

The Debtor filed its bankruptcy petition for several reasons, including: (i) to resolve the known Tort Claims in a uniform and orderly fashion; (ii) to provide a forum for notice to and resolution of any outstanding, unknown tort claims and to resolve those potential tort claims in a uniform and orderly fashion; (iii) to investigate and resolve the Alter Ego Claims for the benefit of all of its creditors; (iv) to provide a mechanism for pro rata payments to creditors from the Debtor's finite pool of assets, including insurance; and (v) to wind-up the Debtor's financial affairs in an organized fashion.

## ARTICLE III.     THE DEBTOR'S CHAPTER 11 CASE

### A.     Events During the Case

On the Petition Date, the Debtor filed its bankruptcy petition under chapter 11 of the Bankruptcy Code.  At that time, the Debtor sought authority to retain Cohne Kinghorn, P.C. as the Debtor's general bankruptcy counsel.   On September 29, 2017, the Court entered an order approving the retention of Cohne Kinghorn, P.C.

On September 26, 2017, the Debtor timely filed its Schedules.

On November 16, 2017, the Debtor filed its Motion for Entry of an Order Authorizing the Debtor to Enter Into an Agreement to Employ Piercy Bowler Taylor & Kern, L.L.C. as an Independent Contractor to Provide Bankruptcy Management Services, and to Approve the Appointment of Mark D. Hashimoto as Chief Restructuring Officer (the "Application to Employ CRO"), wherein the Debtor sought

court approval to employ Mark Hashimoto ("Hashimoto") as the Debtor's Chief Restructuring Officer. On December 6, 2017, the Court entered an Order approving the Application to Employ CRO (the "Order Approving Application to Employ CRO"). Under the Order Approving Application to Employ CRO, Hashimoto was engaged as the Debtor's Chief Restructuring Officer. Among other things, Hashimoto has final decision-making authority regarding the Debtor's potential claims and causes of action for alter-ego, substantive consolidation, or similar claims or theories against any of the Debtor's affiliates or parent entities, as well as the full and exclusive authority to investigate and act on the aforementioned claims and causes of action.

Pursuant to Local Bankruptcy Rule 3003-1(a), "[i]n a chapter 11 case, a proof of claim or interest is timely filed if it is filed not later that 90 days after the first date set for the meeting for creditors under § 341 of the Code, or, if filed by a governmental unit, not later than 180 days after the date of the order for relief." LBR 3003-1(a). January 9, 2018 (the "Bar Date") is the date and time by which proofs of claim by all claimants (other than governmental units) were required to be filed. The deadline for a governmental unit to file a proof of claim is March 6, 2018.

## ARTICLE IV. THE PLAN

### A.    Purpose of Plan.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its equity interest

holders.   In addition to permitting the rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all the legal and equitable interests of the debtor as of the Petition Date.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a chapter 11 plan is the principal objective of a chapter 11 reorganization case.  A chapter 11 plan sets forth the means for satisfying claims against and interests in a debtor.  Confirmation of a chapter 11 plan by the Bankruptcy Court binds the debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor whether or not such creditor or equity interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.  Subject to certain limited exceptions, the order approving confirmation of a plan discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan. Because the Plan proposed herein is a plan of liquidation, the Debtor will not receive a discharge in this case.

The Debtor believes that implementation of the Plan will provide holders of Allowed Claims and Interests a greater distribution than they would receive if this case was converted to a Chapter 7 case.  The summary of the Plan set forth below

is qualified in its entirety by reference to the provisions of the Plan.

**B.     Classification and Treatment of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan of reorganization must provide certain treatment for Administrative Expense and Priority Tax Claims and otherwise classify claims and interests and provide for their treatment.   As a result, the Plan (a) describes the treatment to be afforded to Administrative Expense Claims (which includes claims of compensation by professionals) and Priority Tax Claims and United States Trustee Quarterly Fees and Other Statutory Fees and (b) classifies Claims and Interests in separate Classes and provides different treatment for different Classes of Claims and Interests.   As described more fully below, the Plan provides, separately for each Class, that holders of certain Claims will receive various amounts and types of consideration, thereby giving effect to the different rights of holders of Claims and Interests in each Class.

**C.     Plan Overview.**

The following is only a general overview of the Plan, and is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements appearing elsewhere in this Disclosure Statement and the Plan.   Certain provisions of the Plan, and thus the descriptions and summaries in this Disclosure Statement, may be the subject of further negotiations that are subject to change.   The Debtor is reserving the right to amend or modify the Plan consistent with § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**D.    Summary of Treatment of Claims and Interests.**

The following is a brief summary of the treatment of Claims and Interests under the Plan.  A Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled.  In accordance with the Bankruptcy Code, Allowed Administrative Claims and Allowed Priority Tax Claims have not been classified.

**1.    Unclassified Claims.**

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, have not been classified, and the respective treatment of such unclassified Claims is set forth in Article II of the Plan.  Unclassified Claims are to be treated as follows:

a.    <u>Administrative Expense Claims.</u>    Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Claim shall be paid by the Reorganized Debtor in full, in Cash, in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) the Effective Date or (b) the date on which such Administrative Expense Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Expense Claims against the Debtor representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, or liabilities arising under loans or

advances to or other obligations incurred by the Debtor, as Debtor in Possession, pursuant to Bankruptcy Court approval, shall be paid by the Reorganized Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

    b. <u>United States Trustee Quarterly Fees and Other Statutory Fees</u>.

All fees due and payable under Section 1930 of Title 28 shall be paid within ten Business Days after the Effective Date. In addition, the Reorganized Debtor shall pay the U.S. Trustee quarterly fees due and payable on all disbursements, including Plan payments and disbursements, in and outside of the ordinary course of business until entry of a final decree, dismissal of the Case or conversion of the Case to a case under Chapter 7, as such obligations become due.

    **2.** **Classified Claims Against and Interests in the Debtor.**

| Class Description | Proposed Treatment Under the Plan For Holders Of Allowed Claims Or Interests In Each Class |
|---|---|
| Class 1 – Employee Claims – Unimpaired – Not Voting | The Debtor believes that all Claims of this Class have been paid in full. To the extent of any unpaid Claims, each holder of an Allowed Employee Claim shall receive, on account of their Claims against the Debtor, cash in an amount equal to the Allowed Claim amount on the later of the Effective Date or the date such Employee Claim becomes an Allowed Claim, or as soon after as is practicable. |
| Class 2 – Non-Tax Priority Claims – Unimpaired – Not Voting | The Debtor believes that all Claims of this Class have been paid in full. To the extent there are any unpaid Non-Tax Priority Claims, each holder of an Allowed Non-Tax Priority Claim shall receive, on account of their claims against the Debtor, cash in an amount equal to such Allowed Non-Tax Priority Claim on the later of the Effective Date or the date such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, or as soon thereafter as is practicable. |
| Class 3 – Secured | MidCap, the holder of the Allowed Secured Claim of this Class, |

| | |
|---|---|
| Claim of MidCap Financial Services, LLC– Impaired – Voting | shall receive the following treatment:<br><br>Retention of Liens.   Subject to the provisions outlined below, MidCap shall retain all prepetition Liens securing the Allowed Secured Claim of this Class having the same rights and priorities accorded to such Liens as of the Petition Date.  The collateral securing this Claim consists of all assets of the Debtor, except for the Alter Ego Claims.  To the extent that the Reorganized Debtor concludes that MidCap's prepetition liens were unperfected or are otherwise avoidable, the Reorganized Debtor may seek to avoid those liens and reclassify MidCap's claim as a Class 6 Subordinated Claim, subject to notice to MidCap and a hearing and other applicable requirements of Bankruptcy Code § 502 and the Bankruptcy Rules.<br><br>Payment.  Unless MidCap's claim is later reclassified as a Class 6 Subordinated Claim, MidCap will be paid the proceeds from the liquidation of the Debtor's remaining assets, to the extent that there are any and excluding the Alter Ego Claims, up to the amount of the Class 3 Claim, 60 days after such funds are received by the Reorganized Debtor.  Should the proceeds of the secured assets be insufficient to fully satisfy the Class 3 Claim, the unpaid portion of the Allowed Amount of this Claim shall be paid a Pro Rata Distribution as a Class 6 Subordinated Claim. |
| Class 4 – Unsecured Tort Claims – Impaired –Voting | The holders of the Claims of this Class shall receive the following treatment:<br><br>Proofs of Claim.  All holders of Class 4 Claims must submit proofs of claim no later than the Claim bar date established by the Court.  All such proofs of claim must separately identify the amounts asserted for general, special and punitive damages, if any.<br><br>Mediation.  Within 60 days of the Effective Date, the Reorganized Debtor and each of the Class 4 claimants shall meet and confer to establish the date, time and place for a mandatory, non-binding mediation of the Class 4 Claims held by that particular claimant and the Reorganized Debtor.  Such mediation shall be held in Salt Lake City, Utah, shall be for a minimum of one day and shall |

occur no later than 120 days after the Effective Date.  At least one party-representative shall be present at the mediation.  The mediator shall be chosen by agreement of the parties, but if the parties are unable to agree on the identity of the mediator, Utah ADR Services shall appoint one of its neutrals who has served as a former state court judge.

No later than 14 days prior to the scheduled mediation, the Class 4 Claimant shall submit to the Reorganized Debtor a statement of the amount that claimant will accept in full satisfaction of the claimant's Class 4 Claim.  No later than 7 days prior to the mediation, the Reorganized Debtor will submit to the Class 4 claimant a statement indicating the amount the Reorganized Debtor would agree to be treated as an Allowed Class 4 Claim.

If the parties are able to agree on the amount of the particular claimant's Class 4 Claim at the mediation, the Reorganized Debtor will file a motion seeking approval of the settlement pursuant to Bankruptcy Rule 9019.   If the event a resolution is achieved at mediation, the Reorganized Debtor shall pay the mediator's fee.  Any resolution at mediation will be treated solely as compensatory damages.

Determination of Allowed Claim Amount.  If the parties are unable to agree on the amount of a particular Class 4 Claim following mediation, the mediator's fee shall be paid equally by the Reorganized Debtor and the Class 4 claimant.  The last offer made by the Reorganized Debtor shall be memorialized and no confidentiality shall exist as to that number.   That number shall be considered an Offer in Judgment under applicable law for purposes of subsequent litigation, dated as of the mediation date.

Following an unsuccessful mediation and if there is a pending case involving the particular Class 4 Claim, the parties shall liquidate the claim in such proceeding.  If there is not a pending case involving the particular Claim, within 60 days following the conclusion of the unsuccessful mediation, the Reorganized Debtor shall commence a case in the United States District Court for the District of Utah seeking a determination of the Allowed

| | |
|---|---|
| | amount of the Claim.<br><br>Payment of Compensatory Portion of Allowed Class 4 Claim. The compensatory portions of the Allowed Class 4 Claim (general and specials) shall be paid as follows:<br><br>Amounts covered by insurance will be paid within sixty days of entry of (i) a final judgment allowing the Class 4 Claim or (ii) an order of the Bankruptcy Court approving the terms of a settlement between the Reorganized Debtor, the Class 4 Claimant and the insurance company.  Should, due to the existence of other Claims under the Policy, the amount payable on a specific Class 4 Claim under the applicable insurance policy be undetermined, payment shall occur upon the latest of the events of (i) above and the date the amount payable under the policy is determinable.<br><br>Amounts not covered by insurance shall be paid as a Class 5 Unsecured Claim.<br><br>Payment of Punitive Damage Portion of Allowed Class 4 Claim. Punitive damages determined to be due by a final judgment or approved settlement shall be paid on a pro rata basis as a Class 6 Subordinated Claim. |
| Class 5 – Unsecured Claims – Impaired - Voting | Each holder of an Allowed Unsecured Claim shall receive a Pro Rata Distribution on account of such Claim from the Alter Ego Claims proceeds, following the payment of the Class 3 Claim. Payment shall occur within the later of 90 days after (i) the date the last Claim entitled to share in the proceeds of the Alter Ego Claims is determined and (ii) all Alter Ego Claims proceeds are received by the Reorganized Debtor.  If such proceeds are realized over time and, in the reasonable judgment of the Reorganized Debtor, it is possible to pay an installment of the funds received to date without jeopardizing payment of the pro rata share of the Claims not yet Allowed, a partial payment may be made to the Allowed Claims of this Class from the installment received of the Alter Ego Claims.  In no event shall the Reorganized Debtor be liable for unpaid Class 5 Claims should it reasonably exercise its discretion to make an installment payment to any Allowed Class 5 Claim under this provision. |

| Class 6 –<br>Subordinated Claims<br>– Impaired – Voting | Each holder of an Allowed Subordinated Claim shall receive a<br>Pro Rata Distribution on account of such Claim, following the<br>payment in full of all Allowed Class 5 Unsecured Claims.<br>Payment shall occur on a pro rata basis within 90 days after<br>Allowed Class 5 Unsecured Claims are paid in full. |
|---|---|
| Class 7 – Equity<br>Interests – Impaired<br>– Not Voting | On the Effective Date, all Allowed Equity Interests in the Debtor<br>shall be cancelled.  Each holder of an Equity Interest in the<br>Debtor shall neither receive nor retain any property under the<br>Plan.  All Allowed Equity Interests in the Debtor are deemed to<br>have rejected the Plan and are not entitled to vote to accept or<br>reject the Plan. |

### E.    Plan Implementation

#### 1.    General

The Plan shall be implemented through the means contemplated by

Sections 1123(a)(5), (b)(3) and (b)(4) of the Bankruptcy Code: (a) prior to the Effective

Date, by the Debtor and (b) on and after the Effective Date, by the Reorganized Debtor.

Pursuant to the Confirmation Order, the Debtor or the Reorganized Debtor, as

applicable, may take all actions as may be necessary or appropriate to effect any

transaction described in, approved by, contemplated by, or necessary to effectuate the

Plan.  Without limiting the foregoing, such transactions may include:  (i) the execution

and delivery of appropriate agreements or other documents of reorganization containing

terms that are consistent with the terms of the Plan and that satisfy the requirements of

applicable law; (ii) the execution and delivery of appropriate instruments of transfer,

assignment, assumption, or delegation of any property, right, liability, duty, or obligation

on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates

with the appropriate governmental authorities pursuant to applicable law; and (iv) all

other actions the Debtor and the Reorganized Debtor, as applicable, determine are necessary or appropriate.

## 2. Vesting of Assets; Release of Liens; Further Implementation

The Plan will further be implemented as follows:

On the Effective Date, all assets of the Estate shall vest in the Reorganized Debtor and shall be subject to the management, control and custody of the Reorganized Debtor pursuant to the terms of this Plan.  The Reorganized Debtor shall be entitled to prosecute all Causes of Action and Retained Claims and Defenses, including the Alter Ego Claims.  Except as otherwise provided in this Plan and the Confirmation Order, and without prior or further authorization of the Bankruptcy Court, the Reorganized Debtor shall possess all rights and powers possessed by a trustee appointed under the Bankruptcy Code.

The Reorganized Debtor shall prosecute to resolution the Alter Ego Claims, which are defined in the Plan. By way of explanation, the Alter Ego Claims are based on certain allegations raised by the plaintiffs in the Rostain Litigation and the Disarno Litigation, wherein the *Rostain* and *Disarno* plaintiffs generally allege that (i) the Debtor and/or entities related to the Debtor siphoned funds from the Debtor; (ii) entities related to the Debtor hired and controlled the Debtor's staff and; (iii) entities related to the Debtor exercised control over the finances, budget, policies, and procedures of the Debtor such that those entities were, and are, the alter ego(s) of the Debtor. The Alter Ego Claims would also include any claims that insiders or related entities improperly

transferred or used assets of the Debtor for their own benefit, including accounts receivable.

As set forth in *ANR Ltd. Inc. v. Chattin*, 89 B.R. 898, 902-04 (D. Utah 1988), the Alter Ego Claims will be solely owned by the Reorganized Debtor, to the exclusion of the *Rostain* and *Disarno* plaintiffs and any other creditors or alleged creditors of the Debtor. Under *ANR Ltd.,* "it is appropriate to categorize an action based on the alter ego doctrine as property of the estate." *Id.* at 904; s*ee also Raytheon Co. v. Boccard USA Corp.*, 369 S.W. 3d 626 (Tex. App. 2012) (holding that alter-ego claims are property of a reorganized debtor, not individual creditors). The Alter Ego Claims will be subject to the sole and exclusive authority of Hashimoto to investigate, prosecute, liquidate, or otherwise resolve for the benefit of the Reorganized Debtor and the Debtor's creditors.

The *Rostain* and *Disarno* plaintiffs disagree with the Debtor's analysis of *Anr. Ltd.* and related cases and assert that the Alter Ego Claims cannot be the exclusive property of the Reorganized Debtor. The Debtor understands that the *Rostain* and *Disarno* plaintiffs would assert that the Alter Ego Claims are personal claims belonging to each of them as specific creditors, and not claims that belong to the general creditor body as a whole. As stated in *Anr. Ltd.*, "[t]o determine whether a particular cause of action accrues specifically to a claimant or generally to the corporation, a court must decide whether the injury is peculiar and personal to the claimant or general and common to the corporation and other creditors." *ANR Ltd. Inc. v. Chattin*, 89 B.R. at 902 (citing *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987)). The Debtor anticipates that, absent agreement by the *Rostain* and *Disarno*

plaintiffs, the Court may need to make such a determination for the Debtor to claim the Alter Ego Claims as its exclusive property.

After the Effective Date, the Reorganized Debtor may employ, engage the services of, and compensate other Persons and professionals (which may include professionals previously or concurrently employed by the Debtor) that are reasonably necessary to assist the Reorganized Debtor in performing its duties under this Plan, without the necessity of further authorizations by the Bankruptcy Court. The Reorganized Debtor shall also have right to engage, employ and/or retain any current employees, agents or representatives of the Debtor if the Reorganized Debtor deems their services as reasonably necessary to assist the Reorganized Debtor in performing its duties under this Plan.

Pursuant to the Bankruptcy Code and the Confirmed Plan, the Reorganized Debtor shall be authorized to put into effect and carry out the terms of the Plan and any order of the Bankruptcy Court entered in the Case. After the Reorganized Debtor has completed its responsibilities under this Plan, the Reorganized Debtor shall be wound up and dissolved.

### 3.   Preservation of Causes of Action

In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise provided in the Plan, all Causes of Action as well as all Retained Claims and Defenses transferred to the Reorganized Debtor shall be retained by the Reorganized Debtor, and the Reorganized Debtor shall have the power and authority to prosecute and defend all such Causes of Action and Retained Claims and Defenses. Such

Retained Claims shall specifically include the Alter Ego Claims, to the exclusion of any other person or entity to prosecute or otherwise pursue the Alter Ego Claims.

The Alter Ego Claims shall be under the control and management of an independent third party Chief Restructuring Officer of the Reorganized Debtor, charged with the responsibility of liquidating and resolving such claims.  This officer shall have the sole authority to prosecute the Alter Ego Claims, including the use of judicial action.  Any settlement of the Alter Ego Claims shall be performed in accordance with paragraph 7.4 of the Plan.

The Chief Restructuring Officer shall be paid by the Reorganized Debtor.  Unless otherwise stated in the Confirmation Order, the Chief Restructuring Officer shall be Hashimoto.  Hashimoto's resume is attached as Exhibit "B."

### 4.    Compromise and Settlement

Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Reorganized Debtor may, subject to approval of the Bankruptcy Court, compromise and settle Claims against the Debtor or any Claims the Reorganized Debtor or the former Estate may have against other Persons, including the Alter Ego Claims.  The Debtor shall have the right, with approval of the Bankruptcy Court, to compromise and settle Claims against the Debtor or Claims the Debtor or the former Estate may have against other Persons up to and including the Effective Date.  On the Effective Date, such rights shall pass to the Reorganized Debtor, and thereafter, Claims against the Reorganized Debtor or Claims the Reorganized Debtor or the former Estate may have against other Persons may be compromised and settled exclusively by the

Reorganized Debtor with the approval of the Bankruptcy Court.

**5.      Terms of Injunctions or Stays**

Unless otherwise provided herein, all injunctions or stays provided for in the
Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise in effect on
the Confirmation Date shall remain in full force and effect until the Effective Date.  If the
Plan is not confirmed, all such injunctions or stays shall remain in full force and effect
until ordered otherwise by the Bankruptcy Court or until an alternative plan of
reorganization is confirmed in the Case or the Case is dismissed.  Except as may be
determined otherwise by Final Order of the Bankruptcy Court, all distributions and
transfers of property pursuant to the Plan shall be made free and clear of all liens,
claims and encumbrances and, on the Confirmation Date, all holders of Claims or
Interests shall be permanently enjoined from and restrained against commencing or
continuing any suit, action or proceeding against the Reorganized Debtor, or asserting
against the Reorganized Debtor or the assets or property thereof, any claim, interest or
cause of action based upon any act or omission, transaction or other activity of any kind
that occurred prior to Confirmation.

**6.      Further Assurances.**

On the Effective Date or as soon as reasonably practical thereafter, the
Reorganized Debtor is authorized to and may issue, execute, deliver, file or record all
documents and such other contracts, securities, instruments, releases, and other
agreements or documents and take such actions as may be necessary or appropriate to
effectuate, implement and further evidence the terms and conditions of the Plan, without

the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

### 7.      Effects of Appeal.

Unless the Confirmation Order is stayed pending a timely appeal therefrom, at the option of the Debtor, the Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service or filing of a motion under Bankruptcy Rules 7052, 8002, 8003, 8015, 9023 or 9024.

### 8.      Exemptions from Certain Transfer Taxes and Recording Fees.

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (i) the issuance, transfer, or exchange of any debt, equity security, or other interests in the Debtor or the Reorganized Debtor; (ii) creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and this Plan and/or the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the

collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 9.      Termination of Committee.

Any committee appointed during the Chapter 11 case shall be dissolved and its members discharged upon the Effective Date or as soon as practicable thereafter.  All remaining fees and expenses of the professionals retained by the Committee shall be paid in full or otherwise disallowed by Final Order of the Bankruptcy Court, whether before or after the Effective Date, without regard to any prior termination of the Committee.

### F.      Claims

### 1.      Claims Administration

The dates of January 9, 2018 for non-governmental Claims and March 6, 2018 for governmental Claims were set by the Bankruptcy Court as the deadline for filing Proofs of Claim in the Case.  The deadline for filing a request for payment of any Administrative Expense shall be sixty (60) calendar days after the Effective Date of the Plan.  Notwithstanding this deadline, the Internal Revenue Service shall not be obligated to file an Administrative Expense request with respect to which a tax return is required to be filed.

The Reorganized Debtor shall be responsible for examining Claims and for filing and resolving objections to Claims in all instances in which objections have not been filed by the Debtor prior to the Effective Date and in accordance with other

provisions of the Plan. As to objections filed by the Debtor prior to the Effective Date but not resolved or determined by the Effective Date, the Reorganized Debtor shall be vested on the Effective Date with all rights, interests, and authority of the Debtor. On and after the Effective Date, the Reorganized Debtor shall have the power to assert and administer all Causes of Action and all Retained Claims and Defenses. The Reorganized Debtor shall have the right to object to any Claim, and to assert defenses, counterclaims, or subordination against any Claim, irrespective of how the Claim was scheduled. The Reorganized Debtor may retain professionals in pursuit of any of the Causes of Action or the Retained Claims and Defenses on a full or partial contingency fee basis or other performance-based compensation arrangement (as opposed to an hourly compensation arrangement), as the Reorganized Debtor may agree with said professionals.

### 2.    Estimation of Disputed Claims

(a)    The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim subject to estimation under Section 502(c) of the Bankruptcy Code, including any Disputed Claim for taxes to the extent permitted by Section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism set forth in the Plan or approved by the Bankruptcy Court.

**3.      Interest on Claims.**

Unless specifically provided in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the respective Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon.

**G.      Executory Contracts**

**1.      Rejection of Contracts and Leases**

Other than as set forth in this Plan, all executory contracts and unexpired leases that exist between or among the Debtor and any other Person shall be deemed rejected by operation of this Plan pursuant to Section 365(a) of the Bankruptcy Code on the Effective Date, except for any such contract or lease (a) that has been assumed or rejected, or renegotiated and assumed on modified terms, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) that has been entered into by the Debtor during the pendency of the Case in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (c) that is the subject of a motion to assume or reject, or a motion to approve renegotiated terms and to assume or reject on such terms, filed prior to the Effective Date, (d) is an insurance policy; or (e) that is specifically treated otherwise in this Plan or a Plan Agreement or in the Confirmation Order.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of

executory contracts and unexpired leases as provided for herein.

### 2.    Bar to Rejection Damages

Claims arising from the rejection of the Debtor's executory contracts or unexpired leases shall be treated as General Unsecured Claims. The holder thereof shall file a proof of claim by the date fixed in such rejection order or, if no deadline is specified in such order, within thirty (30) days of the effective date of the rejection of such contract or lease, or shall be forever barred.

### 3.    Cure of Defaults

On the Effective Date, the Reorganized Debtor  shall (a) cure or provide adequate assurance that the Reorganized Debtor will cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan and (b) compensate or provide adequate assurance that the Reorganized Debtor will promptly compensate the other parties to such executory contract or unexpired lease for the agreed amount of any actual pecuniary loss to such party resulting from such undisputed default in accordance with Section 365(b)(1) of the Bankruptcy Code.  In the event that the Debtor disputes the existence of a default, or the nature, extent or amount of any required cure, adequate assurance or compensation, the Debtor's and the Reorganized Debtor's obligations under Section 365(b) of the Bankruptcy Code shall be determined by a Final Order, and any such obligations shall be performed by the Reorganized Debtor unless otherwise provided in such Final Order.

### 4.    Modification and Amendments

The Debtor may alter, amend or modify the Plan in accordance with

Section 1127(a) of the Bankruptcy Code at any time prior to Confirmation. On and after

the Confirmation Date, but prior to substantial consummation of the Plan as defined in

Section 1101(2) of the Bankruptcy Code, the Debtor (prior to the Effective Date) or the

Reorganized Debtor (after the Effective Date) may, under Section 1127(b) of the

Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or

omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the

Confirmation Order, and such matters as may be necessary to carry out the purposes

and effects of the Plan, so long as such proceedings do not materially adversely affect

the treatment of holders of Claims or Interests under the Plan; provided, however, that

prior notice of such proceedings shall be served in accordance with the Bankruptcy

Rules or any orders of court.

**5.      Revocation, Withdrawal or Non-Consummation**

The Debtor shall have the right to revoke or withdraw the Plan at any time prior

to the Effective Date. If revoked or withdrawn prior to the Effective Date, or if the

Confirmation Date or the Effective Date does not occur, then the Plan, any settlement

or compromise embodied in the Plan (including the fixing or limiting to an amount any

Claim or Class), the assumption or rejection of executory contracts or leases effected

by the Plan, and any document or agreement executed or to be executed pursuant to

the Plan shall be null and void and of no effect. In such event, nothing contained

herein, and no acts taken to implement the Plan, shall be deemed to constitute a

waiver or release of any Claims against the Debtor or any other Person or any claims

by the Debtor or the Debtor against any Person, to prejudice in any manner the rights

of the Debtor, or any Person in any further proceedings involving the Debtor or to constitute an admission of any sort by the Debtor or any other Person.

**H.**     **Confirmation**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**1.**     **Voting Procedures and Solicitation of Votes**

The voting procedures and the procedures governing the solicitation of votes are described above.

**2.**     **Confirmation**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the Debtor or by a person acquiring property under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the chapter 11 case, has been disclosed to the Bankruptcy

Court, and any such payment made before the confirmation of the plan is reasonable or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

- The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as member, director or officer of the Reorganized Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

- With respect to each Class of Claims or Interests, each holder of an impaired Claim or Interest has either accepted the plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated on the effective date under Chapter 7 of the Bankruptcy Code. See discussion of "Best Interests Test" below.

- Each Class of Claims or Interest has either accepted the Plan or is not impaired under the Plan.

- Except to the extent that the holder of a particular Claim has agreed to

different favorable treatment of such Claim, the Plan provides that administrative expense claims and priority tax Claims will be paid in full as required by the Bankruptcy Code.

- At least one Class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.  See discussion of "feasibility," below.

### 1.    Acceptance

Classes 1 and 2 of the Plan are unimpaired under the Plan and are not entitled to vote to accept or reject the Plan.  Class 7 is deemed to reject the Plan and does not vote.  All other Classes are Impaired and will be entitled to vote to accept or reject the Plan.

### 2.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that the Plan is feasible.  A feasible plan is one that will not lead to a need for further reorganization or liquidation of the Debtor, unless such reorganization or liquidation is proposed in the Plan.  As a plan of liquidation, the Debtor believes that the Plan satisfies the feasibility

requirement imposed by the Bankruptcy Code.

<u>3      Best Interests Test</u>

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This requirement often is referred to as the "best interests test".

The starting point in determining whether the Plan meets the best interests test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtor's assets in a Chapter 7 liquidation case.  These proceeds must then be reduced by the costs of such liquidation, including costs incurred during the chapter 11 cases and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee. The potential chapter 7 liquidation distribution in respect of each Class must be reduced further by costs imposed by the delay caused by conversion to chapter 7.  In addition, inefficiencies in the claims resolution process in a chapter 7 would negatively impact the recoveries of creditors.  The net present value of a hypothetical chapter 7 liquidation distribution in respect of an impaired Class is then compared to the recovery provided for in the Plan for that Class.  The liquidation analysis is set forth on Exhibit "C".

4.    Cramdown

The Debtor will seek to confirm the Plan notwithstanding the rejection by any of the impaired Classes.  To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, nonaccepting Class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."  The Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(i)    Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(ii)    Unsecured Creditors.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting Class will not receive any property under the plan.  (This provision is often referred to as the "absolute priority rule.")

(iii)    Interests.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation

preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting Class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting Class if the value of the cash and/or securities to be distributed to the nonaccepting Class is equal to, or otherwise fair when compared to, the value of the distributions to other Classes whose legal rights are the same as those of the nonaccepting Class.

### 3.    Conditions to Confirmation

(1)    Except as expressly waived, the Plan shall be null and void and have no force or effect unless the Court shall have entered the Confirmation Order, which shall be a Final Order and which Confirmation Order shall:

(a)    confirm the Plan without modification except as modified by the Debtor in accordance herewith;

(b)    be in form and substance acceptable jointly to the Debtor;

(c)    not be severable and are mutually dependent;

(d)    declare that the transfer of the Debtor's assets, including the transfer of ownership of all remaining real property to the Reorganized Debtor shall be free from any and all recordation and transfer taxes; and

(e)    declare that the Debtor has solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code and that the Debtor and each of its affiliates, agents, directors, officers, employees, members, advisors and

attorneys have participated in good faith and in compliance with the applicable

provisions of the Bankruptcy Code, and therefore are not liable for the violation of any

applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 4.      Conditions to Effective Date

Except as expressly waived, a condition precedent to the Effective Date is the

entry of the Confirmation Order, in form and substance acceptable to the Debtor and no

request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy

Code shall have been made, or, if made, shall be pending, provided that, if an appeal of

the Confirmation Order or any other such order is filed but no stay is granted in

connection therewith, the Debtor may elect to permit the Effective Date to occur

notwithstanding pendency of appeal.

### 5.      Waiver of Conditions

All of the conditions precedent for Confirmation may be waived by the Debtor

without any notice to parties in interest or the Bankruptcy Court and without a hearing,

unless waiver is prohibited by law.

### 6.      Effect of Failure of Conditions

In the event that the conditions for Confirmation have not been satisfied or

waived on or before sixty (60)  days after the Confirmation Date, then upon written

notification filed  by the Debtor with the Bankruptcy Court: (a) the Confirmation Order

shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and

all holders of Claims and Interests shall be restored to the status quo ante as of the day

immediately preceding the Confirmation Date as though the Confirmation Date had

never occurred, and (d) all obligations of the Debtor with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against the Debtor or any claims of the Debtor against any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**I.    Federal Income Tax Consequences**

The following discussion summarizes certain federal income tax consequences of the implementation of the Plan to the Debtor and certain holders of Claims and Interests.

The following summary is based on the Internal Revenue Code of 1986, as amended, (the "Tax Code") and Treasury regulations promulgated and proposed thereunder (the "Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"). Changes or new interpretations of these rules may have retroactive effect and could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested an opinion of counsel with respect to any of the tax aspects of the Plan. In addition, the Debtor has not requested a ruling from the IRS concerning the federal income tax consequences of the Plan, and the consummation of the Plan is not conditioned upon the issuance of any such ruling. Thus, no assurance can be given as to the interpretation that the IRS or a court of law will adopt.

This summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign persons, broker- dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, real estate investment trusts and tax-exempt entities).

This summary also assumes that the various third-party debt and other arrangements to which the Debtor is a party will be respected for federal income tax purposes in accordance with their form, and that Claims and Interests are held as capital assets.

Accordingly, the following summary is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to a holder of a Claim or Interest.

**IRS CIRCULAR 230 NOTICE:  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT:  (I) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER FEDERAL, STATE OR LOCAL TAX LAWS, (II) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS DISCUSSED HEREIN, AND (III) HOLDERS OF**

CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR
PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

### 1.    Consequences to Interest Holders

#### a.    Limited liability companies

The Debtor is a limited liability company that is taxed as a partnership for U.S. federal income tax purposes.   A partnership is not itself a taxpaying entity for U.S. federal income tax purposes. A partnership's income or loss is allocated among its partners, who are required to report the income or loss allocated to them on their own tax returns.   A partner's tax basis of the interest in the partnership is initially equal to the amount of cash and the adjusted tax basis of property contributed to the partnership.

A partner's tax basis increases for additional contributions and the partner's share of taxable and tax-exempt income and gain, and decreases for distributions and the partner's share of losses.   An increase in a partner's share of partnership liabilities or a partner's assumption of partnership liabilities is treated as a cash contribution to the partnership that increases tax basis, and a decrease in a partner's share of partnership liabilities or the assumption by the partnership of a partner's liabilities decreases tax basis, but not below zero.   Cash distributions, including a decrease in a partner's share of partnership liabilities, in excess of tax basis is taxable and generally treated as gain from the sale of a partnership interest.   Generally, a partner is not allowed to deduct his or her share of partnership losses for the year in excess of the adjusted tax basis of his or her interest in the partnership.   Any excess

is allowed in any subsequent year in which a partner's adjusted tax basis increases. A partner shares partnership recourse liabilities to the extent the partner bears the economic risk of loss with respect to the liabilities, i.e., based on a hypothetical partnership liquidation at a time when the partnership has no assets, after taking into account any rights of contribution or reimbursement from other partners or third parties that are related to other partners.

In general, holders of Allowed Interests in the Debtor should recognize gain or loss in an amount equal to the difference between (x) the sum of the amount of Cash and the fair market value of other property, if any, received in respect of their Interest pursuant to the Plan (whether on or after the Effective Date), and (y) their adjusted tax basis in their Interest. Such gain or loss generally will be capital gain or loss, and will be long-term if their Interest shall have been held for at least one year at the Effective Date.

b.    Cancellation of Indebtedness Income

If a debt is forgiven or reduced, cancellation of indebtedness income ("COD Income") may result. Whether COD Income is realized is made at the partnership level. If realized, such COD Income is then allocated among the partners. The tax treatment of that income will be determined with respect to each partner at the partner level.

Generally, the amount of COD Income is the difference between (i) adjusted issue price of the old indebtedness less (ii) the sum of the amount of cash paid and the issue price of the new debt and (iii) the fair market value of any new consideration

given in satisfaction of the old indebtedness.  The adjusted issue price of old debt is typically the outstanding principal balance plus any previously accrued interest that has been deducted for Federal Income tax purposes.  It should be noted that when income is realized from the discharge of indebtedness to the extent the payment of the debt by the tax payer would have given rise to a deduction.

### 2.    Consequences to Holders of Secured Claims and Unsecured Claims

Each holder of an Allowed Claim will recognize gain or loss in an amount equal to the difference between (a) the "amount realized" by the holder in satisfaction of the Claim (other than any Claim for accrued but unpaid interest) and (b) the holder's adjusted tax basis in the Claim (other than any Claim for accrued by unpaid interest). The "amount realized" by a holder will equal the sum of any Cash received by the holder upon the Effective Date and/or the fair market value of the holder's right to receive subsequent distributions pursuant to the Plan.  The character of any gain or loss recognized as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a holder of an Allowed Claim will be determined by a number of factors, including, among others the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was purchased at a discount, and whether and to what extent the holder had previously claimed a bad debt deduction in respect of such Claim.

### 3.    Accrued but Unpaid Interest

A portion of the consideration received by holders of Claims may be

49

attributable to accrued but unpaid interest on such Claims.  Such amount should be taxable to that holder as interest income if such accrued interest has not been previously included in the holder's gross income for U.S. federal income tax purposes.  Conversely, it is possible that a holder of Claims may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claims was previously included in the U.S. holder's gross income but was not paid in full by the Debtor. The character of such loss may be ordinary rather than capital, but the tax law is unclear on this issue.

### 4.     Information Reporting and Withholding

All distributions to holders of Allowed Claims or Interests under the Plan are subject to any applicable withholding obligations (including employment tax withholding).  Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then-applicable rate.  Backup withholding generally applies if the holder:  (i) fails to furnish its social security number or other taxpayer identification number ("TIN"); (ii) furnishes an incorrect TIN; (iii) fails properly to report interest or dividends; or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is such holder's correct number and that such holder is a United States person that is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations

and financial institutions.

In addition, from an information reporting perspective, applicable Treasury Regulations generally require disclosure by a taxpayer on its federal income tax return of certain types of transactions in which the taxpayer participated, including, among others, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holders' federal income tax returns.

The foregoing summary has been provided for informational purposes only. All holders of Claims and Interests are urged to consult their tax advisors concerning the federal, state, local, and foreign tax consequences applicable under the Plan.

**J.    Risk Factors**

**HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION OR INVESTING IN ASSETS OF THE DEBTOR.**

**1.    Certain Bankruptcy Considerations**

Although the Debtor believes that the Plan will satisfy all requirements

necessary for confirmation by the Bankruptcy Court, there can be no assurance that

the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no

assurance that modifications of the Plan will not be required for confirmation or that

such modifications would not necessitate a resolicitation of votes.  Finally, there can

be no assurance that any or all of the conditions to the Effective Date of the Plan will

be met (or waived).  Accordingly, even if the Plan is confirmed by the Bankruptcy

Court, there can be no assurance that the Plan will be consummated.

## 2.    Material United States Federal Income Tax Considerations

THERE ARE A NUMBER OF MATERIAL UNITED STATES FEDERAL

INCOME TAX CONSIDERATIONS, RISKS AND UNCERTAINTIES ASSOCIATED

WITH CONSUMMATION OF THE PLAN.  INTERESTED PARTIES SHOULD READ

CAREFULLY THE DISCUSSION SET FORTH ABOVE, ENTITLED "CERTAIN

FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN" FOR A DISCUSSION

OF THE MATERIAL UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

AND RISKS FOR THE DEBTOR AND FOR HOLDERS OF CLAIMS AND

INTERESTS THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN

RESULTING FROM THE TRANSACTIONS OCCURRING IN CONNECTION WITH

THE PLAN.

## K.    Alternatives to Plan

If the Plan is not confirmed and consummated, the alternatives include (i)

liquidation under chapter 7 of the Bankruptcy Code and (ii) confirmation of an

alternative plan or plans of reorganization or liquidation.

### 1. Liquidation Under Chapter 7

If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under section 1129(a) and (b) of the Bankruptcy Code, this chapter 11 case may be converted to a case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate any remaining assets of the Debtor for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code.  Attached as Exhibit "C" is a liquidation analysis demonstrating this option.

### ARTICLE V. CONCLUSIONS AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to holders of Claims and Interests.  Other alternatives would involve significant delay, uncertainty and substantial additional administrative costs. The Debtor urges holders of impaired Claims entitled to vote on the Plan to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than 4:30 p.m., Mountain Time, on _____, 2018.

DATED this 4th26th day of January, 2018.

**Avalon Care Center-Chandler, LLC, Debtor and Debtor in Possession**

By: /s/ Anne Stuart _____
Anne Stuart, Its Authorized Signatory

**Cohne Kinghorn, P.C.**

/s/ George Hofmann _____
George Hofmann
Counsel for the Debtor and Debtor in Possession

**EXHIBIT "A"**
**TO**
**DISCLOSURE STATEMENT**

# EXHIBIT "B"
## TO
## DISCLOSURE STATEMENT

**EXHIBIT "C"**
**TO**
**DISCLOSURE STATEMENT**